Matter of Liam DD. (Jamie CC.) (2025 NY Slip Op 07253)

Matter of Liam DD. (Jamie CC.)

2025 NY Slip Op 07253

Decided on December 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 24, 2025

CV-24-0896
[*1]In the Matter of Liam DD., Alleged to be a Neglected Child. Schuyler County Department of Social Services, Respondent; Jamie CC., Appellant. (Proceeding No. 1.)
In the Matter of Liam DD., Alleged to be a Neglected Child. Schuyler County Department of Social Services, Respondent; Bryan DD., Respondent. (Proceeding No. 2.)

Calendar Date:November 19, 2025

Before:Garry, P.J., Aarons, Pritzker, Powers and Corcoran, JJ.

Lisa K. Miller, McGraw, for appellant.
Steven J. Getman, County Attorney, Watkins Glen (Kristin E. Hazlitt of counsel), for Schuyler County Department of Social Services, respondent.
John A. Cirando, Syracuse, for Bryan DD., respondent.
Andrea J. Mooney, Ithaca, attorney for the child.

Corcoran, J.
Appeal from a corrected order of the Family Court of Schuyler County (Matthew Hayden, J.), entered February 1, 2024, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent Jamie CC. (hereinafter the mother) and respondent Bryan DD. (hereinafter the father) are the parents of the subject child (born in 2020). In January 2023, petitioner filed separate neglect petitions against the mother and the father. The neglect petition against the mother was premised upon her alleged drug use, failure to provide necessities for the child and failure to follow a safety plan for his well-being that had been put in place by child protective officials. The neglect petition against the father arose from his alleged failure to follow the same safety plan, which prohibited the mother from being alone with the child due to her apparent drug use. After a fact-finding hearing, Family Court issued an order adjudicating the child to be neglected by each parent. The mother appealed. The father failed to file a notice of appeal but filed a brief challenging the order that found that he neglected the child.
As a threshold matter, we agree with petitioner that the father's challenges to the order are not properly before us. An appeal from a Family Court order shall be taken by filing the original notice of appeal with the clerk of the Family Court and serving it as provided in CPLR 5515 (1) on adverse parties (see Family Ct Act § 1115). The filing of a notice of appeal is nonwaivable and jurisdictional (see Ogborn v Hilts, 262 AD2d 857, 858 [3d Dept 1999], citing Matter of Haverstraw Park v Runcible Props. Corp., 33 NY2d 637, 637 [1973]), and the father may not avoid the consequence of his failure to do so claiming ineffective assistance of counsel here (compare Matter of Skylar P.J. [Kerry M.T.], 204 AD3d 1001, 1002-1003 [2d Dept 2022]; Matter of Ricardo T., Jr. [Ricardo T., Sr.], 172 AD3d 732, 733 [2d Dept 2019]).[FN1] "Generally, an appellate court cannot grant affirmative relief to a nonappealing party unless it is necessary to do so in order to accord full relief to a party who has appealed" (Hecht v City of New York, 60 NY2d 57, 60 [1983]; accord Matter of Susan UU. v Scott VV., 119 AD3d 1117, 1119 n 4 [3d Dept 2014]). Here, the mother could be afforded full relief, i.e., an order modifying the finding that she neglected the child, without this Court granting any affirmative relief to the father. Thus, under the circumstances, we may not consider his challenge to the order finding that he neglected the child (see McGovern v McGovern, 218 AD3d 1067, 1070 n 1 [3d Dept 2023]; Matter of 61 Crown St., LLC v City of Kingston Common Council, 217 AD3d 1144, 1145 [3d Dept 2023]; Finch v Erie Ins. Co., 211 AD3d 1152, 1155 [3d Dept 2022]; Matter of Rutland v O'Brien, 143 AD3d 1060, 1061 n 2 [3d Dept 2016]). The father's remaining arguments, including that he may obtain affirmative [*2]relief under the "interest of justice" standard of CPLR 306-b, lack merit.
Turning to the mother's appeal, "[n]eglect is established when a preponderance of the evidence shows that the child['s] physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and that the actual or threatened harm to the child[ ] results from the parent's failure to exercise a minimum degree of care in providing the child[ ] with proper supervision or guardianship" (Matter of N'Thai N. [Mali N.], 242 AD3d 1313, 1317-1318 [3d Dept 2025] [internal quotation marks and citations omitted]). "A finding of neglect requires only an imminent threat of injury or impairment, not actual injury or impairment, and such threat may be established through a single incident or circumstance" (Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1294 [3d Dept 2017] [citations omitted]; see Matter of Thomas XX. [Thomas YY.], 180 AD3d 1175, 1176 [3d Dept 2020]). "In determining whether [a parent] failed to exercise a minimum degree of care, the critical inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Joseph GG. [Chrystal FF.], 227 AD3d 1238, 1239 [3d Dept 2024] [internal quotation marks and citations omitted]). "Neglect must be demonstrated by 'competent, material and relevant evidence' at the hearing" (Matter of Hazelee DD. [Nicholas EE.], 222 AD3d 1223, 1225 [3d Dept 2023] [citation omitted], quoting Family Ct Act § 1046 [b] [iii]).
Notably, proof that a person repeatedly misuses drugs "to the extent that it has or would ordinarily have the effect of producing in the user . . . a substantial impairment of judgment, or a substantial manifestation of irrationality," among other things, will establish a prima facie case of neglect, except when such person was voluntarily and regularly participating in a drug rehabilitative program (Family Ct Act § 1046 [a] [iii]; see Matter of Kylee R. [David R.], 154 AD3d 1089, 1091 [3d Dept 2017], lv denied 30 NY3d 911 [2018]; Matter of Jonathan E. [John E.], 149 AD3d 1197, 1199 [3d Dept 2017]). Once petitioner has proven drug abuse, thereby triggering the presumption of neglect, there is no required showing "of specific parental conduct vis-Á-vis the child and neither actual impairment nor specific risk of impairment need be established" (Matter of Rosaliee HH. [Samantha HH.], 221 AD3d 1299, 1300 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Kylee R. [David R.], 154 AD3d at 1091; Matter of Jonathan E. [John E.], 149 AD3d at 1199). In assessing Family Court's determination in a neglect proceeding, we accord great deference to its factual findings and assessment of credibility and will not disturb such findings if they are supported by a sound and substantial basis (see Matter of Kingston V. [Javon V.], 234 AD3d 1056, 1057 [3d Dept 2025], lv dismissed 43 NY3d 951 [2025]).
We find that there was a sound [*3]and substantial basis in the record for Family Court to conclude that the mother's repeated drug use, violation of an established safety plan, and failure to provide shelter, food and medicine constituted neglect. In December 2022, the child's parents lived apart, with the child staying primarily with the father at his friend's home. On December 21-22, 2022, the mother used methamphetamine outside the presence of the child. After using drugs, she operated a motor vehicle that was pulled over by a sheriff's department sergeant on December 22. Following his search of respondent's vehicle, he found butane torches and fuel, pseudoephedrine, a digital scale, glass pipeware, hallucinogenic mushrooms and methamphetamine in plastic baggies. These items were located either on the driver's side floorboard or near other items identifiable as the mother's personal property. The mother was arrested for several drug-related charges, including unlawful manufacture of methamphetamine.
On December 24, 2022, the mother went to the home where the father was staying with the child, anticipating that the family would spend Christmas together. However, the parents argued about the mother's recent arrest, prompting the father to leave abruptly. The mother left with the child and eventually took him to a hospital emergency room for evaluation of his flu symptoms. She admitted to hospital staff that she was homeless and lacked diapers, food and medicine for the child due to her abrupt departure from the father's home. The hospital visit prompted a hotline report to which a Schuyler County Department of Social Services (hereinafter DSS) caseworker responded on December 27. On that date, the mother went with the child to obtain a voucher to extend her stay at emergency DSS housing. The mother admitted to the caseworker that she used methamphetamine on December 21-22; the caseworker asked the mother to obtain a drug screen on December 27 that confirmed the presence of methamphetamine and amphetamine. Police accompanied DSS staff to the mother's motel room on December 27 to implement a safety plan under which the child would reside with the father at the paternal grandparents' home. Under the plan, the mother's contact with the child would be supervised until she produced appropriate drug-screen results and was meaningfully engaged in substance abuse services. From December 24-27 the child was solely in the mother's care, and she tested positive for methamphetamine on December 27. Despite her conceded awareness that the safety plan barred unsupervised contact, the mother retrieved the child from the father on January 20, 2023. The supervisor who initially accompanied her left for work, leaving the child unsupervised in the mother's sole care for approximately three hours in violation of the agreed-upon safety plan.
The mother's admitted methamphetamine use and her positive drug-screen approximately six days later established a prima facie case of neglect pursuant to Family [*4]Ct Act § 1046 (a) (iii) (see Matter of Rosaliee HH. [Samantha HH.], 221 AD3d at 1300; Matter of Jonathan E. [John E.], 149 AD3d at 1199).[FN2] Contrary to the mother's contention, petitioner was not required to present additional evidence for the commonsense proposition that overnight methamphetamine use — particularly given the quantity and variety of drugs found in her vehicle — would ordinarily impair her judgment (see Matter of Carter B. [Logan D.], 154 AD3d 1323, 1325 [4th Dept 2017]), lv denied 30 NY3d 910 [2018]). We defer to Family Court's determination that the mother's testimony was not credible, particularly her explanations that she used the scale for "crafting," found the mushrooms while hiking, and was unaware that the pseudoephedrine and butane torches were in her vehicle. While the mother argues that the presumption was inapplicable here because her December 21, 2022 relapse was an isolated incident, Family Court received certified records of prior indicated reports concerning her methamphetamine misuse in 2019 and alcohol abuse in 2014, which were properly considered as evidence of recurrence and lack of sustained rehabilitation. Additionally, the mother's implausible explanation regarding her vehicle search and her positive methamphetamine test on December 27 supports the conclusion that her drug use was ongoing. She offered no evidence that she regularly engaged in a drug rehabilitation program during the relevant time and thus failed to rebut the presumption (see Matter of Kylee R. [David R.], 154 AD3d at 1092). While the mother argues that she obtained safe housing, medical treatment and supplies for the child, "the presumption of neglect that arises under Family Ct Act § 1046 (a) (iii) cannot be rebutted by evidence that the child[ ] [was] well cared for and not in danger" (Matter of Jonathan E. [John E.], 149 AD3d at 1200).
Even without the statutory presumption, the record amply supports that the child was at imminent risk of harm in the mother's care. The mother used methamphetamine and possessed multiple controlled substances shortly before assuming custody of the child; several days later, she tested positive for methamphetamine while the child remained in her care. Additionally, she voluntarily left a stable residence, rendering herself and the child temporarily homeless and without basic supplies, despite having access to such necessities elsewhere. Finally, the mother knowingly violated the conditions of the supervision agreement. While the parties never received a written copy of the safety plan, and the testimony revealed some sincere confusion about its exact requirements, the mother understood that she was prohibited from having unsupervised contact with the child until she engaged in substance abuse treatment, and she failed to provide any proof that she did so. The mother's characterization of her relapse as a "small reoccurrence" demonstrates lack of insight into the risks associated with her substance abuse, and [*5]underscores that her unsupervised visit with the child, absent demonstrated treatment, was neglectful. Family Court found that her testimony throughout the hearing minimized the risks of her conduct and exhibited a lack of candor. While the mother argues that the child suffered no injury and was not present during her drug use and arrest, a neglect finding does not require " 'actual injury or impairment, so long as the danger is near or impending, not merely possible' " (Matter of Messiah RR. [Christina RR.], 190 AD3d 1055, 1057 [3d Dept 2021], quoting Matter of Thomas XX. [Thomas YY.], 180 AD3d at 1176). Accordingly, we discern no basis upon which to disturb Family Court's finding of neglect.
Garry, P.J., Aarons, Pritzker and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Following oral argument of this matter, the Court of Appeals expressly held that the right to assigned counsel in certain Family Court proceedings necessarily encompasses the right to "effective assistance of counsel," and that a remedy is available when ineffective assistance of counsel appears "on the face of the record" (Matter of Parker J. [Beth F.], ___ NY3d ___, ___, 2025 NY Slip Op 06533, *3 [2025]). We need not apply such analysis here because counsel's alleged ineffective assistance does not appear on the face of the record.

Footnote 2: The mother's reliance on journal articles concerning the length of time marijuana and methamphetamine remain detectable in the body does not require extended discussion. The mother did not offer the articles, nor any admissible medical proof, at the fact-finding hearing.